OPINION
Plaintiffs-appellants, Joseph and Cheryl Tecco, appeal a decision rendered by the Columbiana County Court of Common Pleas whereby the trial court granted summary judgment in favor of defendants-appellees, Civigenics, Inc. (Civigenics), the Columbiana County Jail, and the Columbiana County Board of Commissioners (collectively hereinafter "County").
On August 17, 1998, the Garfield Heights Municipal Court found Joseph Tecco guilty of driving under suspension, and sentenced him to sixty days in jail. Tecco began to serve his sentence on August 24, 1998 at the Cuyahoga County Jail. Due to a problem with overcrowding, he was transferred to the Columbiana County Minimum Security Misdemeanor Jail (MSMJ) on September 8, 1998.
The MSMJ is a former nursing home that Columbiana County now uses to house minimum-security inmates. Civigenics operates the MSMJ for the County pursuant to a written contract.
The MSMJ is a U-shaped, brick, single-story structure. The open area within the U is utilized for recreational activities. The recreation area contains a paved basketball court, a type of circular jogging track, and a grassy area where football is played. This recreational area is surrounded by brick walls on three sides. The Northern wall enclosing the recreation area, from approximately knee-height up, is composed primarily of windows. Some of these windows on the northern wall are pane glass while others are made of Plexiglas.
On September 12, 1998, Tecco was playing touch football with several other inmates. At one point during the game, Tecco stood near the northern wall not far from the wall of windows. He noticed that one of the players on offense was going out for a pass. It appeared to him that this individual might run into a window in the northern wall. Tecco attempted to prevent the individual from hitting the window. In doing so, Tecco fell into the window. Tecco put his right arm through the window and suffered severe lacerations. In addition, he also suffered significant scaring to the region as well as partial loss of the use of his hand.
Appellants filed an amended complaint on September 7, 1999 against the County and Civigenics. Joseph Tecco filed an action for negligence while Cheryl Tecco filed an action for loss of consortium and loss of spousal support. Appellees filed their answer October 27, 1999 denying the allegations set forth in appellants' amended complaint.
Appellees filed a joint motion for summary judgment on February 10, 2000. Appellants filed a brief in opposition to summary judgment on March 2, 2000. On March 7, 2000, the trial court sustained appellees' summary judgment motion and entered judgment in favor of appellees. The trial court's judgment entry provided in relevant part:
 "Movant argues that it used reasonable care and that there is no showing by plaintiff that they have breached any duty of care and that the danger was open and obvious. The motion was supported by affidavit and excerpts from discovery. Plaintiff opposes the motion by arguing that the facility owed a duty to plaintiff to not have ordinary glass windows near a recreation area, nor approve of the playing of football or other sports in an area adjacent or near to windows. Plaintiff claims that defendants owe to plaintiff a higher degree of care than ordinary care including to warn of `latent defects' such as non-safety type glass in a window in a recreation area. Plaintiff argues that the windows were not `open and obvious' and that the danger in the windows was a hidden danger and of which defendants had superior knowledge and a duty to protect others from. Plaintiff has provided an affidavit in support of his brief and memorandum.
 "In a Motion for Summary Judgment, such as that before the Court, the non-moving party (plaintiff) must produce evidence on the issues upon which they bear the burden of production at trial Wing v. Achor Media (1991), 59 Ohio St.3d 108. Plaintiff has not supported the issues presented in any greater detail than they have in the allegations made in their complaint. Summary judgment is the appropriate means of insuring that cases need not proceed to trial upon the basis of mere allegation.
 "Plaintiff has not opposed the motion with any support for their conjectures that there were some type of safer type of window, that there was some inherent flaw in the design of the recreation area or to support, other than by plaintiff's own self-serving affidavit that the window in question was not open and obvious.
 "There is no question but that MSMJ facility owes a duty of care to the inmates. However, the situation before the Court today is no different than the situation of the hypothetical case where an individual walks through a glass door entrance to a building. There are certain dangers in life which we must be on the lookout because they are open and obvious; we must protect ourselves. Under plaintiff's contention, one can argue that the use of a glass door is, in and of itself, per se, unreasonable (sic) dangerous; this type of argument fails without evidence to support it.
 "Plaintiff certainly received an unfortunate injury as a result of his use of the recreation area. Hind-sight (rather than foresight), may indicate that greater measures may need be taken to protect people from themselves. However, there is no showing, in construing the evidence most strongly in favor of plaintiff that a duty of care has been breached." (Emphasis added.)
Appellants filed timely notice of appeal April 3, 2000.
Appellants' first assignment of error states:
 "WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLANTS WHERE THERE EXISTED A MATERIAL ISSUE OF FACT AS TO WHETHER THE APPELLEES OWED A HIGHER DUTY OF CARE TO APPELLANT JOSEPH C. TECCO AND TO WARN HIM OF THE LATENT DEFECT OF THE EXISTENCE OF NON-SAFETY TYPE GLASS IN A DESIGNATED RECREATIONAL AREA."
Appellants' second assignment of error states:
 "WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE APPELLEES CLAIM THAT THE WINDOWS IN THE AREA WHERE APPELLANT JOSEPH C. TECCO WAS INJURED ARE AN `OPEN AND OBVIOUS' DANGER WHEN SUCH A DELINATION IS IMPROPER AS WINDOWS CAN TAKE ON MANY CHARACTERISTICS DEPENDENT ON THEIR MAKE UP, USE AND LOCATION AND THEREIN A QUESTION OF MATERIAL FACT EXISTS AS TO THE NATURE AND CHARACTER OF THE PARTICULAR WINDOWS INVOLVED HEREIN."
Because appellants' assignments of error raise common issues of legal analysis, they will be addressed jointly.
Appellants essentially argue that the trial court erred in granting summary judgment in favor of appellees. Appellants argue that when the evidence is viewed in a light most favorable to them, summary judgment is inappropriate, as genuine issues of material fact remain that necessitate trial by jury. Appellants point to two specific examples that they argue constitute issues of material fact. First, appellants argue that there is a genuine issue of material fact as to whether or not appellees breached a duty to appellants by replacing some of the windows in question with Plexiglas while retaining pane glass in the window that injured Joseph Tecco. Appellants argue that appellees had a duty to inform Joseph Tecco as to which windows in the recreational area were made up of ordinary pane glass and, which ones had been replaced with Plexiglas.
Second, appellants argue that there is a genuine issue of material fact as to whether or not the windows in question constituted an open and obvious danger. Appellants argue that Joseph Tecco was under no duty to make an independent investigation as to which of the windows in the recreational area were made up of ordinary pane glass and which ones were made up of Plexiglas. Appellants argue that appellees had superior knowledge of the danger and the potential for harm associated with pane glass. As such, appellants argue that appellees had a duty to disclose to Joseph Tecco the dangers associated with the pane glass windows.
The Ohio Supreme Court set out the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280 . The court stated:
 "We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Id. at 293.
Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.
State ex rel. Parsons v. Flemming (1994), 68 Ohio St.3d 509, 511. When reviewing a summary judgment case, appellate courts are to apply a denovo standard of review. Cole v. American Indus. and Resources Corp.
(1998), 128 Ohio App.3d 546, 552.
Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, citing Turner, supra, and Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248. In determining whether a genuine issue of material fact remains to be litigated, the court must turn its attention to the substantive law of the claim being litigated. Joseph Tecco's action against appellees arises in negligence. The elements of negligence are a duty, breach of duty, and injury resulting proximately therefrom. Mussivand v. David (1989), 45 Ohio St.3d 314, 318.
A review of the relevant case law shows that the trial court erred in the instant case in applying the open and obvious doctrine to the County in the same manner as to Civigenics.
In Simmers v. Bentley Construction (1992), 64 Ohio St.3d 642, the Ohio Supreme Court was called upon to distinguish between the application of the open and obvious doctrine to claims against landowners, or those who have an interest in the land, from claims against non-landowners, or those persons who conduct activity on the land with the consent of the landowner.
In Simmers, defendant-landowner, CSX, had contracted with defendant-construction company, Bently, to repair a bridge owned by CSX. At some point, a Bently crew member attempted to drive a fifteen-ton front-end loader across a portion of the bridge. The front-end loader fell through the boards of the bridge, leaving a fifteen-and-a-half-by-four-foot hole on the walkway. Bently did not attempt to repair or barricade the hole. Plaintiff Stephen Simmers was walking across the bridge and fell through the hole onto the rocks in the riverbed below.
Stephen's father filed a negligence action against CSX and Bentley. Plaintiffs claimed defendants' negligent creation of the hole and failure to take appropriate safety precautions was the proximate cause of Stephen's injuries. The trial court granted summary judgment in favor of CSX and Bentley on the ground that the hole was an open and obvious danger.
The Ohio Supreme Court reversed the judgment of the trial court. Specifically, the court distinguished the application of the open and obvious doctrine against a landowner from its application against a non-landowner. In examining the application of the open and obvious defense to landowners, the court noted:
 "The rule relieving a defendant from liability for harm resulting from `open and obvious' hazards is a legal doctrine that has developed in suits against property owners by a person injured when he comes on the property. The `open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property. * * * The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. * * *
 "Historically, a landowner's liability in tort is incident to the occupation or control of the land, which involves the owner's right and power to admit and exclude people from the premises. * * * The `open and obvious' doctrine, therefore, governs a landowner's duty to person's entering the property — property over which the landowner has the right and power to admit or exclude persons as invitees, licensees, or trespassers." (Emphasis added and citations omitted.) Id. at 644-45.
The foregoing passage demonstrates that CSX, as a landowner, could defeat a claim of liability if the alleged negligence resulted from an open and obvious hazard. However, the court went on to note that the open and obvious doctrine had a different application to a non-landowner:
 "Bently was an independent contractor performing services for the owner of the bridge. While Bently may have had the right to be on, an in the vicinity of, the bridge, it had no property interest in the premises. * * * We are not persuaded to extend the `open and obvious' doctrine to persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises.
 "Accordingly, we hold that an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from a duty to warn those entering the property concerning open and obvious dangers on the property." (Emphasis added.) Id. at 645.
The court then noted that since Bently had no property interest in the premises, the proper test to apply was a negligence test. Id. As such, the court stated that the question of whether the hazard was an open and obvious danger would become relevant in a comparative negligence analysis:
 "In the law of negligence, an `open and obvious' danger can also place affirmative defenses at issue. These would be (1) contributory negligence, and (2) assumption of risk. * * *
 "In essence, Bently argues that Stephen was negligent in failing to protect himself from an open and obvious danger and that his negligence proximately caused his own injuries. A plaintiff's contributory negligence, however, does not automatically bar recovery for damages directly and proximately caused by defendant's negligence. R.C. 2315.19(A)(2).
 "Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion. * * * Under the comparative negligence statute, the factfinder apportions the percentage of each party's negligence that proximately caused the plaintiff's damages. * * *" (Emphasis added and citations omitted.) Id. at 646.
Applying Simmers and the summary judgment standard set forth inDresher, the trial court properly granted summary judgment in favor of the County against appellants. However, the trial court erred in granting summary judgment in favor of Civigenics against appellants.
An analysis of the County's motion for summary judgment shows that the County met its initial burden outlined in Dresher. The County set forth evidence showing that the appellants had no evidence to support their claim of negligence against the County. Specifically, the County pointed to testimony in Joseph Tecco's deposition that supported the conclusion that the window, which caused his injuries, was an open and obvious danger. Tecco stated:
 "Q Based on your previous use of the recreation area prior to September 12, 1998 isn't it accurate to say that you were aware of the wall of windows that were surrounding the recreation area?
"A Yes.
"* * *
 "Q Is it accurate to say that the wall and windows were open to your view?
"A Yes.
"* * *
 "Q Was there anything going on at the time that would have hampered your awareness of the presence of the wall just prior to the incident?
"A No.
"* * *
 "Q Sure. Isn't it true based on your experiences with the inherent danger of plate glass you had a responsibility to protect yourself from that glass?
"A Yes."
(J. Tecco Dep. at 36-40).
Upon meeting its initial burden under Civ.R. 56, the burden under Civ.R. 56(E) then shifted to appellants to show that there was a genuine issue of material fact as to the County's liability. As previously noted, Joseph Tecco was well aware of the presence of the windows. Windows, be them in the form of pane glass or Plexiglas, clearly present an open and obvious danger. Joseph Tecco was well aware of their presence and the dangers they posed. Thus, the County could have reasonably expected that Tecco discover those dangers and take appropriate measures to protect himself. As reasonable minds could come to only one conclusion that the windows presented an open and obvious danger, the trial court did not err in granting summary judgment in favor of the County.
A different result is reached when the law is applied to appellants' claims against Civigenics. As noted supra, the determination that the windows constituted an open and obvious danger is not per se fatal to appellants' claims against Civigenics.
It appears that Civigenics was not a landowner or interest holder in the land, and as such, the proper test to apply in determining whether or not appellants can recover against Civigenics is negligence. The essential elements of negligence are a duty, breach of duty, and injury resulting proximately therefrom. Mussivand, 45 Ohio St.3d at 318. A defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of the injury. Simmers,64 Ohio St.3d at 645, citing Huston v. Konieczny (1990), 52 Ohio St.3d 214, 217. An injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone. Id.
Applying Simmers and the summary judgment standard set forth inDresher, it appears that Civigenics failed to comply with its initial burden by pointing or directing the court's attention to evidence in the record demonstrating an absence of a genuine issue of material fact. A review of appellees' motion for summary judgment demonstrates that appellees' summary judgment argument essentially focused on the open and obvious doctrine. While such argument proved determinative in appellants' claims against the County, it is not determinative in appellants' claims against Civigenics. Simmers, supra. Civigenics failed to present evidence in its summary judgment motion that it was an interest holder in the land, or that it discharged its duty to plaintiff and complied with its duty under the law of negligence. Because Civigenics failed in its initial burden under Civ.R. 56(C), the trial court erred in granting summary judgment in favor of Civigenics against appellants.
In addition, it also appears that Cheryl Tecco's claim for loss of consortium and loss of support against Civigenics should also be reversed and remanded for trial. A loss of consortium claim is derivative in that it is dependent upon the defendants having committed a legally cognizable tort upon the spouse who suffers bodily injury. Bowen v. Kil-Kare, Inc.
(1992), 63 Ohio St.3d 84, 93. Because the trial court erred in dismissing Joseph Tecco's negligence claim against Civigenics, it also stands that the trial court erred in dismissing Cheryl Tecco's loss of consortium and support claims against Civigenics.
Appellants' assignments of error are partially with merit.
For the aforementioned reasons, the judgment of the trial court is hereby affirmed in part and reversed in part. We hereby affirm the trial court's grant of summary judgment in favor of the Columbiana County Jail and the Columbiana County Board of Commissioners. In addition, we hereby reverse the trial court's grant of summary judgment in favor of Civigenics, Inc. and remand this matter for further proceedings according to law and consistent with this court's opinion.
Vukovich, J., concurs, Waite, J., concurs.